1
2
3
4

**FILED**
CLERK, U.S. DISTRICT COURT

**2/5/2025**

CENTRAL DISTRICT OF CALIFORNIA
BY: ___jb___ DEPUTY

5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

March 2024 Grand Jury

11

UNITED STATES OF AMERICA,

ED CR No. **5:25-cr-00028-JGB**

12

      Plaintiff,

I N D I C T M E N T

13

      v.

[18 U.S.C. § 1341: Mail Fraud; 18
U.S.C. § 1343: Wire Fraud; 18
U.S.C. § 1029(a)(5): Access
Device Fraud in Excess of $1,000;
18 U.S.C. §§ 982 and 1029:
Criminal Forfeiture]

14

DESIREE DOLORES CHAVIRA,
  aka "Desiree Gutierrez,"

15
16

      Defendant.

17
18
19

The Grand Jury charges:

20

INTRODUCTORY ALLEGATIONS

21

At times relevant to this Indictment:

22

1.   California's Employment Development Department ("EDD") was

23

the administrator of the unemployment insurance ("UI") benefits

24

program for the State of California.

25

2.   On March 13, 2020, the President of the United States

26

declared COVID-19 an emergency under the Robert T. Stafford Disaster

27

Relief and Emergency Assistance Act.  As a result, Congress passed

28

the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"),

which the President signed into law on March 27, 2020.  The CARES Act
provided over $2 trillion in economic relief protections to the
American people from the public health and economic impacts of COVID-
19.

3.    Prior to the enactment of the CARES Act, to be eligible for
UI benefits administered by EDD, a person had to have been employed
and worked in California and received at least a certain amount of
wages from an employer in the 18 months preceding his/her UI benefits
claim.  Because of this requirement, self-employed workers,
independent contractors, and employees with insufficient earnings
were not eligible to receive regular UI benefits.

4.    The CARES Act established a new program — Pandemic
Unemployment Assistance ("PUA") — to provide UI benefits during the
COVID-19 pandemic to people who did not qualify for regular UI
benefits, including business owners, self-employed workers,
independent contractors, and those with a limited work history, who
were out of business or had significantly reduced their services as a
direct result of the pandemic.  UI benefits provided under the PUA
program were sometimes referred to as PUA benefits.

5.    Under the PUA provisions of the CARES Act, a person who was
a business owner, self-employed worker, independent contractor, or
gig worker could qualify for PUA benefits administered by EDD if
he/she previously performed such work in California and was
unemployed, partially unemployed, unable to work, or unavailable to
work due to a COVID-19-related reason.

6.    Persons applying for PUA benefits did not need to submit
any supporting documents to EDD with their applications.  Claimants
reported their total income for the 2019 calendar year on the

2

application.  The stated income was used to calculate the benefits to be paid, which were at least $167 per week.

7.  A PUA benefits claimant was required to answer various questions on his/her application to establish his/her eligibility for the benefits.  The claimant was required to provide his/her name, Social Security number, and mailing address.  The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

8.  After it accepted an application for UI benefits, including an application submitted under the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Bill Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could use to pay for his/her expenses.  The EBP debit card was mailed via the United States Postal Service from BofA to the claimant at the address the claimant provided as his/her mailing address on his/her UI benefits application.

COUNTS ONE THROUGH THREE

[18 U.S.C. §§ 1341, 2(a)]

A.   THE SCHEME TO DEFRAUD

9.    Beginning no later than July 2020 and continuing through at least November 2020, in San Bernardino, Orange, and Los Angeles Counties, within the Central District of California, and elsewhere, defendant DESIREE DOLORES CHAVIRA, also known as "Desiree Gutierrez," together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud EDD and the United States Treasury as to material matters, and to obtain money and property from EDD and the United States Treasury, namely, UI benefits, including PUA benefits, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

B.   MEANS AND METHODS OF THE SCHEME TO DEFRAUD

10.   The fraudulent scheme operated, in substance, as follows:

a.    Defendant CHAVIRA obtained personally identifiable information of inmates, including the inmates' names, dates of birth, and Social Security numbers for the purpose of furthering the fraudulent scheme.

b.    Defendant CHAVIRA filed with EDD fraudulent applications for UI benefits in the names of other persons, namely, persons ineligible to receive PUA benefits, including persons incarcerated in California state prisons.

c.    Defendant CHAVIRA falsely stated and represented on the UI benefits applications that were filed with EDD that the named claimants were individuals whose employment had been negatively

4

affected by the COVID-19 pandemic, thereby triggering eligibility for UI benefits under the PUA provision of the CARES Act.

d.    Defendant CHAVIRA falsely stated and represented on the UI benefits applications that were filed with EDD that the named claimants resided and had worked in the State of California, including in the counties of Los Angeles, Santa Barbara, Riverside, and San Bernadino.

e.    By falsely stating that the named claimants had worked in the State of California, defendant CHAVIRA falsely represented that the named claimants were eligible for UI benefits administered by EDD when, as defendant CHAVIRA then knew, they were not eligible for such benefits.

f.    As a result of the fraudulent UI benefits applications that defendant CHAVIRA filed, EDD authorized BofA to issue EBP debit cards in the names of the named claimants.

g.    To ensure that they received the UI benefits that were paid as a result of the fraudulent applications, defendant CHAVIRA listed on the applications for the UI benefits addresses to which she or her co-schemers had access as the mailing addresses for each of the named claimants.  The mailing address was either defendant CHAVIRA's mailing address or another mailing address to which defendant CHAVIRA or a co-schemer had access.  Defendant CHAVIRA knew that, by listing her mailing address or another mailing address to which defendant CHAVIRA or her co-schemers had access, defendant CHAVIRA would cause BofA to mail the EBP debit cards issued to the named claimants, thereby enabling defendant CHAVIRA and her co-schemers to take possession of the EBP debit cards.

h.    After defendant CHAVIRA and her co-schemers received the EBP debit cards issued because of the fraudulent UI benefits applications she submitted, defendant CHAVIRA and her co-schemers used the debit cards, and caused the debit cards to be used, to withdraw the UI benefits loaded onto the debit cards by making cash withdrawals at Automated Teller Machines and by making purchases using those debit cards.

11.    Through this scheme, defendant CHAVIRA and her co-schemers caused at least approximately 19 fraudulent applications for PUA benefits to be filed with EDD in the names of inmates, resulting in losses to EDD and the United States Treasury of at least approximately $207,996.

C.    USE OF THE MAILS

12.    On or about the dates set forth below, in San Bernardino County, within the Central District of California, and elsewhere, defendant CHAVIRA and her co-schemers, for the purpose of executing the above-described scheme to defraud, willfully caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, or to be sent and delivered by a private or commercial interstate carrier, according to the directions thereon:

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| ONE | July 15, 2020 | EBP debit card ending in 8873 in the name of B.H. that was mailed by BofA to an address in Ontario, California |
| TWO | August 5, 2020 | EBP debit card ending in 0275 in the name of A.S. that was mailed by BofA to an address in Pomona, California |

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| THREE | August 22, 2020 | EBP debit card ending in 8574 in the name of C.O. that was mailed by BofA to an address in Long Beach, California |

1                               COUNT FOUR

2                           [18 U.S.C. § 1343]

3   A.    THE SCHEME TO DEFRAUD

4        13.   Beginning no later than July 2020 and continuing through at

5   least November 2020, in San Bernardino, Orange, and Los Angeles

6   Counties, within the Central District of California, and elsewhere,

7   defendant DESIREE DOLORES CHAVIRA, also known as "Desiree Gutierrez,"

8   together with others known and unknown to the Grand Jury, knowingly

9   and with the intent to defraud, devised, participated in, and

10  executed a scheme to defraud EDD and the United States Treasury as to

11  material matters, and to obtain money and property from EDD and the

12  United States Treasury, namely, UI benefits, including PUA benefits,

13  by means of material false and fraudulent pretenses, representations,

14  and promises, and the concealment of material facts.

15  B.    MEANS AND METHODS OF THE SCHEME TO DEFRAUD

16       14.   The scheme to defraud operated, in substance, as described

17  in paragraphs 11 and 12, which are re-alleged and incorporated here.

18  C.    USE OF THE WIRES

19       15.   On or about September 6, 2020, in San Bernardino County,

20  within the Central District of California, and elsewhere, defendant

21  DESIREE DOLORES CHAVIRA, also known as "Desiree Gutierrez," and

22  others known and unknown to the Grand Jury, for the purpose of

23  executing the above-described scheme to defraud, transmitted and

24  caused the transmission of a wire communication in interstate

25  commerce, namely, defendant CHAVIRA caused the transmission of a wire

26  communication from a Visa DPS server located in Virginia or Colorado,

27  to a Bank of America Automated Teller Machine ("ATM") located in

28

                                      8

Rancho Cucamonga, California, resulting in a withdrawal of $900 in cash at the ATM.

COUNT FIVE

[18 U.S.C. § 1029(a)(5)]

Beginning on or about September 6, 2020, and continuing through on or about November 28, 2020, in San Bernardino and Los Angeles Counties, within the Central District of California, and elsewhere, defendant DESIREE DOLORES CHAVIRA, also known as "Desiree Gutierrez," with access devices (as defined in Title 18, United States Code, Section 1029(e)(1)) issued to other people, specifically, the following debit card account numbers issued to the persons identified below, knowing and with intent to defraud, effected transactions in and affecting interstate and foreign commerce, and by such conduct obtained things of value totaling at least $1,000 during a one-year period:

| UNAUTHORIZED ACCESS DEVICE | ISSUED TO |
|---|---|
| BofA account number ending in 0275 | A.S. |
| BofA account number ending in 5259 | B.H. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Four of this Indictment.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

    (a)  All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

    (b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1029]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2) and 1029, in the event of the defendant's conviction of the offenses set forth in Count Five of this Indictment.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b)    Any personal property used or intended to be used to commit the offense; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the

1  court; (d) has been substantially diminished in value; or (e) has

2  been commingled with other property that cannot be divided without

3  difficulty.

4

5

6

7                                        A TRUE BILL

8

9                                        Foreperson

10

11  JOSEPH T. MCNALLY
    Acting United States Attorney
12

13  *Lindsey Greer Dotson*

14  LINDSEY GREER DOTSON
    Assistant United States Attorney
15  Chief, Criminal Division

16  SEAN D. PETERSON
    Assistant United States Attorney
17  Chief, Riverside Branch Office

18  ERIN C. KISS
    Assistant United States Attorney
19  Riverside Branch Office

20

21

22

23

24

25

26

27

28